**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**LILLIAN MILLIGAN, et al.,**

**Plaintiffs,**

**v.**

**SENTRY EXTERIORS, INC., et al.,**

**Defendants.**

**00-CIV-2279 (WJM)**

**OPINION**

**HON. WILLIAM J. MARTINI**

Mark R. Cuker, Esq.
Williams Cuker Berezofsky
Woodland Falls Corporate Center, Suite 101
210 Lake Drive East
Cherry Hill, NJ 08002-1163

Marc Alster, Esq.
Law Offices of Marc G. Alster, P.A.
2 University Plaza, Suite 311
Hackensack, NJ 07601-1190

Samuel Merovitz, Esq.
Merovitz & Cedar LLP
Greentree Commons, Suite 8001 D
Lincoln Dr. West
Marlton, NJ 08053-4100

*(Attorneys for Plaintiffs)*

Gregory R. Haworth, Esq.
David J. DiSabato, Esq.
Duane Morris LLP
744 Broad St., Suite 1200
Newark, NJ 07102

*(Attorneys for Defendants The Money Store, Inc.; Homeq Servicing Corp.; and First Union Corporation)*

Martin C. Bryce, Jr., Esq.
Emily J. Barnhart, Esq.
Ballard Spahr Andrews & Ingersoll, LLP

Main St. - Plaza 1000 - Suite 500
Vorhees, NJ 08043

*(Attorneys for Defendants Chevy Chase Bank FSB and Key Bank, USA)*

Kathleen Cavanaugh, Esq.
Olshan Grundman Frome Osenzweig & Wolosky
2001 Route 46, Suite 202
Parsippany, NJ 07054

*(Attorneys for Defendants East Coast Mortgage Corp.)*

**MARTINI, U.S.D.J.:**

This matter comes before the Court on the various cross motions for partial summary judgment as to the rescission claims asserted under the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., in Count Three of Plaintiffs' Third Amended Complaint. The Court heard oral argument on the motions on May 3, 2005. For the reasons set forth below, Plaintiffs' motion for partial summary judgment is **DENIED** and the joint motion for partial summary judgment filed by Defendants The Money Store ("TMS"),[1] Chevy Chase Bank FSB ("Chevy Chase"), Key Bank U.S.A. ("Key Bank"), and East Coast Mortgage Co. ("ECM")—referred to collectively herein as the "Bank Defendants"—is, as set forth below, **GRANTED**. Accordingly, all rescission claims against the Bank Defendants asserted in Count Three are hereby **DISMISSED**.

## PROCEDURAL POSTURE

Plaintiffs brought this action as a result of having been victims of a purported fraudulent scheme allegedly perpetrated by a home improvement company, Sentry Exteriors, Inc. ("Sentry"), and either ECM or Chevy Chase. The scheme, which they dub a "two contract dodge," left them saddled with allegedly usurious home loans. TMS, Statewide Savings Bank,

---

[1] TMS is referred to in Defendants' motion papers also as TMS Mortgage, Inc., HOMEQ Servicing Corp., and First Union Corp.

Key Bank, Costal Federal Mortgage, Independence Community Bank, First Union Corp., and HOMEQ Servicing Corp. were assignees of the loan agreements.

By Order dated July 28, 2004, this Court conditionally granted Plaintiffs' motion for class certification with respect to Count Three "for purposes of determining whether the nominal Plaintiffs and unidentified class members are entitled to rescission under TILA." (*See* July 28, 2004 Order.)[2] The instant cross motions for partial summary judgment by the Plaintiffs and Bank Defendants ensued.

**RELEVANT FACTUAL BACKGROUND**[3]

Unless otherwise indicated, the following material facts are not in dispute.

*The Home Improvement Contracts and Subsequent Financing Agreements*

Each of the named Plaintiffs entered into a home improvement contract with Sentry sometime between December 1997 and December 1998 and then subsequently—anywhere from a few days to three months later—entered into a loan agreement with either ECM or Chevy Chase to finance the work to be done under the home improvement contract (and, in some cases, to pay off other general creditors as well). All the home improvement contracts between Plaintiffs and Sentry contemplated that the cash price of the job would in some way be financed. That is, each provided as follows: "All of the above work payable at $[] per month for ___

---

[2] In the same Order the Court reserved on Plaintiffs' motion for class certification with respect to other counts pending adjudication of the TILA count.

[3] Because this discussion does not provide pinpoint citations to the parties' submissions, the Court points out that it is drawn from the numerous statements and counterstatements of undisputed material facts submitted by the parties in connection with their three separate cross motions for partial summary judgment. Although Local Rule 56.1 does not so require, the Court would certainly recommend that in the future the parties attempt to submit a single joint Rule 56.1 statement.

months. First payment is to be made 30 days after completion of said work." Each also provided that "[t]his contract is accepted subject to approval of Contractor and Credit Approval." Indeed, all Plaintiffs ultimately financed their home improvement contracts with a third party—either ECM or Chevy Chase.

Although all the home improvement contracts provided for a three-day rescission period, Plaintiffs did not learn the terms of financing until they entered into the subsequent loan agreements with either ECM or Chevy Chase, several (if not most) of which were entered into outside of the three-day rescission period provided for in the home improvement contracts. The loan agreements between Plaintiffs and either ECM or Chevy Chase consisted of: (1) a "Notice of Right to Cancel" containing instructions on how to cancel; (2) a "Promissory Note and Disclosure Statement" that included a "Truth-In-Lending Disclosure Statement"; and (3) a "Mortgage." Each Plaintiff acknowledged on these forms that he/she received the appropriate number of the "Notice of Right to Cancel." Although Plaintiffs now complain that the loan terms are usurious, none of the Plaintiffs attempted to cancel his or her loan agreement during their cancellation period.

*The Loan Application Process*

It is undisputed that Sentry played some role in the loan application process between Plaintiffs and either ECM or Chevy Chase. With respect to loan applications submitted to Chevy Chase, the parties' submissions indicate that

> Sentry . . . generally met with homeowners regarding home improvements. If a homeowner chose to take out a loan for home improvements, Sentry['s] representative collected loan application information from the homeowner, and passed that information along to Chevy Chase or another lender. *Chevy Chase then decided whether or not to issue a loan to the homeowner*. If Chevy Chase approved the application, Chevy Chase prepared the loan documents. The completed documents were sent to Sentry . . . , whose representative then

> discussed the same with the homeowner/borrower. The executed loan documents were returned to Chevy Chase. Chevy Chase then recorded the mortgage. (emphasis added)

Nothing in the parties' submissions indicates that Chevy Chase either paid Sentry any consideration for the referral of Sentry's customer loan applications or received from Sentry any consideration for approving the loan applications of Sentry's customers.

With regard to loan applications submitted to ECM, again it is undisputed that Sentry played some role in the process. Although there is some factual dispute as to whether ECM directly obtained from its applicants the information necessary for their loan applications (or instead relied solely on information provided by Sentry), the parties' submissions indicate that ECM verified information provided by its applicants and conducted independent loan analyses. And as with Chevy Chase, nothing in the record indicates that ECM paid Sentry any consideration for the referral of Sentry's customer loan applications or received from Sentry any consideration for approving its customers' applications.[4]

---

[4] Plaintiffs argue that the Court should, on a spoilation theory, draw an adverse inference against ECM with regard to ECM's relationship with Sentry—specifically, they ask the Court to conclude that ECM had a formal referral relationship or written agreement with Sentry and that ECM paid consideration to and/or received consideration from Sentry in connection with this referral relationship. (*See* Pltfs.' Consolidated Statement of Undisputed Facts and Reply to Defts.' Counterstatement of Facts at 24–25.) They make this request based on the deposition testimony of a former owner of ECM who testified that he observed documents being thrown out of ECM's offices in April 2000 (two months after the instant lawsuit was filed and approximately two years after the relevant transactions took place). Plaintiffs contend that two of these documents are relevant to this case. Before addressing this argument, the Court notes that Plaintiffs' Rule 56.1 statement is no place for legal argument. Pursuant to local rule, it should set forth only "material facts as to which there exists or does not exist genuine issue." L. Civ. R. 56.1; *see also Eckhaus v. Consol. Rail Corp.*, No. 00-5748, 2003 WL 23205042, at *6 (D.N.J. Dec. 24, 2003); *N.J. Auto. Ins. Plan v. Sciarra*, 103 F. Supp.2d 388, 395 n.4 (D.N.J. 1998). Nevertheless, the Court is aware that "[w]hen the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Refining Corp.*, 72

Despite Sentry's role in these loan application processes, it is important to note that nothing in the parties' submissions indicates that either ECM or Chevy Chase played any role whatsoever in the negotiation or execution of Plaintiffs' home improvement contracts. Nor do they indicate that either ECM or Chevy Chase agreed *at the time the home improvement contracts were entered into* to provide financing. On the contrary, the parties' submissions indicate that ECM and Chevy Chase were free to decline credit applications submitted by Sentry customers. Finally, nothing in the parties' submissions indicates that Sentry required any Plaintiff to accept any loan offered by either ECM or Chevy Chase. In other words, Plaintiffs were not prohibited from seeking financing from any other bank if they were dissatisfied with the loan terms offered by either ECM or Chevy Chase.

Based on these facts, Plaintiffs and the Bank Defendants now cross move for partial summary judgment on the TILA rescission claims asserted in Count Three.

## ANALYSIS

### I. Standard of Review

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

F.3d 326, 334 (3d Cir. 1995). The Third Circuit has also stated, however, that "[s]uch a presumption or inference arises . . . only when the spoilation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth[;] it does not arise where the destruction was a matter of routine [practice] with no fraudulent intent." *Id*. Because deposition testimony cited by Plaintiffs indicates that it may have been ECM's business practice to discard the relevant documents when it did, the Court cannot *at this point* make any findings regarding possible spoilation or draw any adverse inferences. The Court does not, however, hereby preclude a properly supported motion from being brought at another time.

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). No issue for trial exists unless the non-moving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *See Anderson*, 477 U.S. at 249.

## II. The Bank Defendants Are Entitled to Summary Judgment on Plaintiffs' Claims for Rescission Under TILA

### A. TILA Is Inapplicable to the Initial Home Improvement Contracts

TILA is designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601. In pursuit of these aims, TILA requires that the following material disclosures be made in connection with consumer credit transactions: the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payment scheduled to repay the indebtedness, and carious disclosures required by § 1639(a). *Id.* § 1602(u). Creditors who fail to comply with TILA are liable for damages. *Id*. § 1640.

It is critically important to note that TILA does not apply to every commercial transaction. Under TILA, only a "creditor" in a "consumer credit transaction" in which "credit is extended" is required to make these disclosures. *Id*. § 1635(b). Moreover, the right of rescission provided by TILA and relied upon by Plaintiffs in this case extends only to a certain subcategory of these

consumer credit transactions:

> [I]n the case of any consumer credit transaction . . . *in which a security interest. . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended*, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later . . . .

*Id.* § 1635(a) (emphasis added).

In this case, it cannot be argued that the initial home improvement contracts between the various Plaintiffs and Sentry were in and of themselves "consumer credit transactions" that created for Sentry any security interest in Plaintiffs' dwellings. The contracts do not, as Plaintiffs contend in their opposition to the Bank Defendants' joint motion for partial summary judgment, fall within TILA's ambit simply because Sentry may have been able to acquire a mechanics' lien had any Plaintiff failed to pay for services rendered under the contracts and had Sentry taken all the steps necessary to obtain such a lien. (*See* Pltfs.' Opp. to Defts.' Mot. Summ. J. at 3–16.) TILA defines "security interest" as: (1) "an interest in property *that secures performance of a consumer credit obligation* and that is recognized by state or federal law," or (2) "for purposes of the right of rescission . . . , . . . interests that arise solely by operation of law." 12 C.F.R. § 226.2(a)(25). A mechanics' lien under New Jersey law does not, however, arise to secure performance *of a consumer credit obligation* but instead arises to secure payment for goods and services rendered: "Any contractor, subcontractor or supplier who provides work, services, material or equipment pursuant to a contract, shall be entitled to a lien *for the value of the work or services performed, or materials or equipment furnished*." N.J.S.A. 2A:44A-3 (emphasis added); *see also Thomas Group, Inc. v. Wharton Senior Citizen Housing, Inc.*, 750 A.2d 743, 748 (N.J. 2000) ("[A] party must perform work under a contract to be entitled to a lien . . . ."). Nor

does a mechanics' lien arise solely by operation of New Jersey law upon the contract's execution or upon the performance of services thereunder. Rather, the homeowner must breach the contract and the home improvement company seeking a lien must satisfy an arbitrator that it is entitled to one. *See* N.J.S.A. 2A:44A-21 (setting forth the requirements for imposition of a mechanics' lien on residential property). Were the Court to adopt Plaintiffs' view of the law, *all* installment contracts could be subject to TILA, as they all could potentially result in the creation of a judgment lien were breach to occur and judgment obtained. *Cf. In re Clifton*, 35 B.R. 785, 786–87 (Bankr. D.N.J. 1983) ("In New Jersey, a final judgment for a sum certain entered in the Superior Court of New Jersey, or a judgment of a County District Court that has been docketed with the Superior Court, is a lien upon all real property owned by the judgment debtor that is located within this state.").

The Court cannot conclude, therefore, that TILA's right of rescission extends to Sentry's home improvement contract with the various Plaintiffs.

**B. The Subsequent Finance Agreements Complied with TILA**

It is also beyond dispute that the subsequent, separate, and distinct (even if related) consumer credit transactions between each Plaintiff and either ECM or Chevy Chase, standing alone, complied with TILA.

*The Bank Defendants Did Not Violate 12 C.F.R. § 226.23(c)*

Plaintiffs argue in their opposition to the Bank Defendants' joint motion for partial summary judgment that either ECM or Chevy Chase violated TILA because *Sentry* had already begun work on some of the home improvement contracts by the time loan proceeds were disbursed. (*See* Pltfs.' Opp. to Defts.' Mot. Summ. J. at 17–18.) The regulations provide, in relevant part:

> (c) Delay of *creditor*'s performance. Unless a consumer waives the right of rescission under paragraph (e) of this section, no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded.

12 C.F.R. § 226.23(c) (emphasis added). The statute on its face clearly indicates that it prohibits only *creditors* from performing any services during the rescission period, and Plaintiffs can offer no binding or persuasive legal authority supporting the conclusion that a creditor may be found in violation of this provision as a result of the conduct of third parties under circumstances similar to those in this case. *But see Doggett v. County Sav. & Loan Co.*, 373 F. Supp. 774 (D. Tenn. 1973) (suggesting in dicta that a bank may violate 12 C.F.R. § 226.23(c) as a result of a home improvement company's performance of work during the rescission period where the bank loan is entered into simultaneously with the home improvement contract and where the home improvement company acts as the bank's agent in connection with the loan).

*The FTC Holder Rule Is Inapplicable in This Case*

Without any legal authority, Plaintiffs argue in their opposition to the Bank Defendants' joint motion for partial summary judgment that the Bank Defendants are liable for *Sentry's* alleged TILA violations by virtue of the "FTC Holder" rule. (*See* Pltfs.' Opp. to Defts.' Mot. Summ. J. at 23–25.) The rule provides, in relevant part, that "[i]n connection with the sale or lease of goods or services to consumers . . . it is an unfair or deceptive act or practice for the seller [*i.e.*, Sentry]" to accept the proceeds of a "purchase money" loan unless the relevant loan documents contain the following notice: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained . . . with the proceeds hereof." 16 C.F.R. § 433.2. Citing this provision and referencing Sentry's alleged TILA violation, Plaintiffs contend that "[l]iability can be imposed on [either

ECM or Chevy Chase] even if the home improvement contract [was] not assigned to them, as long as the contract was paid for with the proceeds of the loan." (Pltfs.' Opp. to Defts.' SJ Mot. at 24.) As this Court has already concluded, however, the home improvement contracts are not subject to TILA. There is, therefore, no predicate TILA violation that Plaintiffs could assert under this rule against the Bank Defendants by virtue of their right to assert such a claim against Sentry. The rule, therefore, is inapplicable in this case.

*The Bank Defendants Provided the Milligans and the DeGroats with the Appropriate Documentation*

Finally, Plaintiffs argue that summary judgment in the Bank Defendants' favor would be inappropriate with respect to the claims asserted by Plaintiffs Lance and Belinda DeGroat, Sidney and Lois Milligan, and Samuel and Linda DeGroat because Chevy Chase did not provide separate rescission notices to each person in these husband/wife pairs. (*See* Pltfs.' Opp. to Defts.' Mot. Summ. J. at 25–26.) Although the regulations do require the lender to provide "two copies of the notice of the right to rescind to each consumer entitled to rescind," 12 C.F.R. § 226.23(b)(1), Plaintiffs can point to no evidence to support their contention that the DeGroats and the Milligans were not each given the appropriate number of copies. Indeed, Plaintiffs cannot point to any statements by the DeGroats or the Milligans to this effect. Bizarrely, all Plaintiffs cite in support of this contention (which Plaintiffs did not even raise in support of their own motion for summery judgment as to the rescission claim in Count Three) are copies of TILA notices signed by both members of each couple acknowledging that "[e]ach of the undersigned [received] two copies each of this Notice." (*See* Defts.' Joint Mem. Law in Supp. of Defts.' Mot. Summ. J., Exh. B). Plaintiffs' contention is, therefore, utterly without merit.

**C. TILA Does Not Extend Liability to the Bank Defendants for Sentry's Conduct**

Despite all this, Plaintiffs nevertheless contend that TILA allows them to rescind the bank loans despite their compliance with TILA because the initial home improvement contracts failed to provide a rescission period commensurate with the subsequent credit transactions. (*See* Pltfs.' Br. in Supp. of Mot. Summ. J. at 11–14; Pltfs.' Reply Br. in Further Supp. of Mot. Summ. J. at 2–8.) There is, however, no support for this novel contention in this circuit, and as the Bank Defendants have correctly pointed out the relatively few courts that have passed on this contention have concluded that TILA does not provide such a remedy against creditors for the conduct of third parties. *See Hanlin v. Oh. Builders & Remodelers, Inc.*, 212 F. Supp.2d 752, 758–59 (S.D. Oh. 2002); *King v. Second City Constr. Co.*, No. 97 C 2900, 1997 WL 627649 (N.D. Ill. Oct. 1, 1997) ("[TILA] does not impose liability on a creditor for a third-party's failure to comply with the statute.").

The parties have cited a handful of district court cases in support of and in opposition to such an extension of TILA liability; only two cases are sufficiently analogous and relevant to merit discussion and distinction here. In *In re Lombardi*, 195 B.R. 569 (Bankr. D.R.I. 1996), relied upon by Plaintiffs, a District of Rhode Island bankruptcy court held that a *home improvement company* violated TILA when it failed to provide TILA disclosures upon the consummation of an initial home improvement contract that contemplated future financing where the agreement was followed up by a finance agreement *between the home improvement company and the debtors* (even though the latter agreement complied with TILA). It stated:

> [W]e find and/or conclude: (1) that [the home improvement company] intended and agreed to provide financing [at the time the parties entered into the home improvement contract]; (2) that the contract executed on that date, together with the [subsequent finance agreement] constituted a single transaction; (3) that

> although required to do so [at the time the parties entered into the home improvement contract, the home improvement company] failed to provide the required disclosures under . . . TILA . . . ; and (4) that by providing disclosures in [connection with the subsequent finance agreement], the . . . TILA (non-disclosure) violations [associated with the initial home improvement contract] were not cured.

*Id*. at 571. *In re Lombardi*'s holding clearly was based on the finding that the home improvement company itself agreed, at the time of the initial home improvement contract, to provide financing in the future—*i.e.*, that it became a creditor at that time in a consumer credit transaction. Thus, *In re Lombardi* would support Plaintiffs' case only if there were any evidence in the record that either ECM or Chevy Chase intended and agreed *at the time Plaintiffs entered into the initial home improvement contracts with Sentry* to provide financing to Plaintiffs. Although there is ample evidence in the record that Sentry collected loan application information from Plaintiffs and forwarded it to either ECM or Chevy Chase for consideration *after* the home improvement contracts were entered in to, there is no evidence that any of the parties expected or understood that either ECM or Chevy Chase agreed to extend credit at the time the home improvement contracts were entered into between Plaintiffs and Sentry.

In *Mount v. LaSalle Bank Lake View*, No. 92 C 5645, 1998 WL 381971 (N.D. Ill. July 2, 1998), cited by the Bank Defendants, a Northern District of Illinois court declined to extend TILA liability to the bank assignee of finance agreements between a home improvement company and debtor where the related home improvement contract failed to comply with TILA. The Court declined to do so because there was no evidence "indicating the parties' intent and expectations . . . that the [initial home improvement] contracts and the [subsequent finance] contracts comprised one transaction." *Id*. at *8. Thus, *LaSalle* would support Plaintiffs' case only if there were any evidence that Plaintiffs, Sentry, and ECM or Chevy Chase expected and

intended to treat as one single transaction the initial home improvement contracts between Sentry and Plaintiffs and the subsequent financing agreements between Plaintiffs and the Bank Defendants. Again, there is no such evidence in this case. Indeed, Plaintiffs have not even contended that this was their understanding at the time.

### D. ECM's Separate Motion for Partial Summary Judgment

Because the Court, for the above reasons, grants the Bank Defendants' motion for partial summary judgment with respect to all Plaintiffs' rescission claims asserted in Count Three, it will not at this time address the alternative bases for summary judgment set forth in ECM's separate motion for partial summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is **DENIED** and the Bank Defendants' joint motion for partial summary judgment is, as set forth above, **GRANTED**. Accordingly, all claims for rescission asserted in Count Three against The Money Store, East Coast Mortgage Co., Chevy Chase Bank FSB, and Key Bank, U.S.A. asserted are hereby **DISMISSED**.

An appropriate Order accompanies this Opinion.

s/William J. Martini

______________________________
**William J. Martini, U.S.D.J.**

cc: The Honorable Ronald J. Hedges, U.S.M.J.